[NOT YET SCHEDULED FOR ORAL ARGUMENT]

**No. 26-5181**

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

ALISHEA KINGDOM, SOLO NICHOLS, and JAS KAPULE,
on behalf of themselves and all persons similarly situated,

Plaintiffs-Appellees,

v.

DONALD J. TRUMP, in his official capacity as President of the
United States, et al.,

Defendants-Appellants.

---

On Appeal from the United States District Court
for the District of Columbia

---

# EMERGENCY MOTION FOR A STAY PENDING APPEAL AND
# ADMINISTRATIVE STAY

---

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIC D. McARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
CHARLES W. SCARBOROUGH
McKAYE L. NEUMEISTER
DOMENIC A. CANONICO
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7246*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-1754*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

### A.     Parties and Amici

Plaintiffs in district court, and appellees here, are Alishea Sophia Kingdom, Solo Nichols, and Jas Kapule, who are three trans-identifying inmates in the custody of the Federal Bureau of Prisons (BOP).  They bring this action on behalf of themselves and a class of other similarly situated inmates.  Defendants in district court, and appellants here, are Donald J. Trump, in his official capacity as President of the United States; Todd Blanche, in his official capacity as Acting Attorney General of the United States; William K. Marshall, III, in his official capacity as Director of BOP;[1] Christopher A. Bina, in his official capacity as Assistant Director for the Health Services Division of BOP; Dana R. DiGiacomo, in her official capacity as Assistant Director of the Reentry Services Division of BOP; and Shane Salem, in his official capacity as Assistant Director of the Correctional Programs Division of BOP.

---

[1] This action was originally brought against defendants William Lothrop, in his official capacity as Acting Director of BOP, and Pamela Bondi, in her official capacity as Attorney General.  Director Marshall and Acting AG Blanche were automatically substituted as parties under Federal Rule of Civil Procedure 25(d).

The States of Indiana, Idaho, Alabama, Arkansas, Florida, Alaska, Georgia, Iowa, Kansas, Louisiana, Mississippi, Missouri, Montana, Nebraska, North Dakota, Ohio, Oklahoma, Soutth Carolina, South Dakota, Texas, Utah, Virginia, West Virginia, Wyoming, participated as amici curiae before the district court.

Several other inmates who are not named plaintiffs in this case have attempted to intervene or otherwise participate in district court: Carla C. Keys, Jeremy Pinson, Antonio Crawford, David Simpkins, Darrell Nash, Michael R. Dye, Elijah Stone, Willie A. Milton, Michelle Alford, Oscar Contreras Aguilar, Job Gillette, Andy Quinn Goodall, and Marissa Hunt.

There were no additional parties or amici curiae in district court, and none have entered an appearance before this Court.

## B.    Ruling Under Review

The ruling under review is an order (Dkt. 202) issued on May 26, 2026, granting a motion for a preliminary injunction.  This ruling was issued by the Hon. Royce C. Lamberth in *Kingdom v. Trump*, No. 1:25-cv-691 (D.D.C.).  This order is attached to this motion.  *See* Add.1-4.

## C.    Related Cases

This case has not previously been before this Court.  Counsel are aware of three related cases within the meaning of D.C. Circuit Rule 28(a)(1)(C):

*Doe v. Blanche*, No. 1:25-cv-286 (D.D.C.); *Jones v. Blanche*, No. 1:25-cv-401 (D.D.C.); and *Moe v. Trump*, No. 1:25-cv-653 (D.D.C.). This Court previously heard an appeal from those cases, which was decided on April 17, 2026. *See Doe v. Blanche*, 172 F.4th 901 (D.C. Cir. 2026) (vacating preliminary injunctions).

*/s/ Domenic A. Canonico*
Domenic A. Canonico
  *Attorney, Appellate Staff*
  *Civil Division*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-1754*

iii

## TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ................................................................. iv

INTRODUCTION ...........................................................................1

STATEMENT ................................................................................2

    A.    Statutory and Regulatory Background......................... 2

    B.    This Litigation ............................................................ 6

ARGUMENT ...............................................................................11

I.    The Government Is Likely To Prevail On The Merits. ........................11

    A.    The preliminary injunction is improperly based on a claim that is moot and abandoned......................................... 11

    B.    Plaintiffs' defunct APA claim does not support relief against the EO generally..........................................15

    C.    The district court lacked authority to extend the existing preliminary injunction under the Prison Litigation Reform Act. ..............................................17

II.    The Remaining Factors Favor A Stay ................................20

CONCLUSION ............................................................................24

CERTIFICATE OF COMPLIANCE

ATTACHMENT A: District Court PI Order (May 26, 2026)

ATTACHMENT B: District Court PI Opinion (June 3, 2025)

## INTRODUCTION

Defendants respectfully move for a stay pending appeal of the preliminary injunction (PI) issued by the district court (Lamberth, J.) on May 26, 2026. The court "extend[ed]" a prior injunction it had issued against a defunct 2025 Bureau of Prisons (BOP) policy implementing the President's *Defending Women* Executive Order to encompass the agency's superseding February 2026 policy on the same subject. Add.2. Yet the court made no findings whatsoever about the lawfulness of the new 2026 policy— indeed, it expressly declined to do so.

The court's order has no basis in law or logic. Plaintiffs concede that they have abandoned their challenge to the 2025 policy. And the purported legal defect with the 2025 policy—an alleged lack of reasoned explanation— does not "extend" to the 2026 policy, which contains ample new reasoning. Even plaintiffs recognize as much, which is why they agreed that they needed to separately challenge the new policy and why the district court held a separate hearing on that challenge.

Besides lacking any legal foundation, the May 26 order's broad scope clearly exceeded the district court's authority. The order prohibits the government from enforcing a provision of the *Defending Women* Executive Order "against any class member in this action," Add.3, based solely on the

court's determination that a particular agency action implementing the Executive Order—the now-superseded 2025 policy—was deficient under the APA's reasonable-explanation requirement. But the court has no authority under the APA to flatly bar the government from implementing an executive order. Thus, on multiple levels, the order impermissibly intrudes on the President's prerogatives to set policy for the operation of the federal prison system and impairs BOP's ability to safely and securely care for the inmates in its custody.

The May 26 order was plainly erroneous and a stay pending appeal is warranted. The order goes into effect on June 1, upon the expiration of the prior injunction. Add.3. This Court should grant a stay pending appeal, or at minimum an administrative stay, by June 1. Plaintiffs oppose this motion.[2]

## STATEMENT

### A.    Statutory and Regulatory Background

**1.**    On January 20, 2025, President Trump issued Executive Order 14168, Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government, 90 Fed. Reg. 8615 (Jan. 30,

---

[2] On May 27, the government filed a motion under Fed. R. App. P. 8(a) requesting a stay pending appeal and seeking a ruling by May 28. Dkt. 204. The district court has yet to rule on the motion.

2

2025) (the EO or Order). The Order's stated purpose is to "defend women's rights and protect freedom of conscience by using clear and accurate language and policies that recognize women are biologically female, and men are biologically male." Order § 1, 90 Fed. Reg. at 8615. The Order thus states that "[i]t is the policy of the United States to recognize two sexes, male and female," which "are not changeable and are grounded in fundamental and incontrovertible reality." Order § 2, 90 Fed. Reg. at 8615. The Order directs agencies to implement this policy in various ways, while making clear that it "shall be implemented consistent with applicable law," Order § 8(b), 90 Fed. Reg. at 8618.

As to "privacy in intimate spaces" in particular, Order § 4, 90 Fed. Reg. at 8616 (formatting modified), the Order contains two specific directives regarding the Bureau of Prisons. As relevant here, Section 4(c) requires the Attorney General to "ensure that the Bureau of Prisons revises its policies concerning medical care to be consistent with this order, and … that no Federal funds are expended for any medical procedure, treatment, or drug for the purpose of conforming an inmate's appearance to that of the opposite sex." Order § 4(c), 90 Fed. Reg. at 8617.

**2.** In February 2025, BOP issued two memoranda implementing the EO. Dkt. 1-1; Dkt. 1-2. The first memorandum concerned what are

3

known as social accommodations, and provided in relevant part that "[n]o appropriated funds should be utilized to purchase any items that align with transgender ideology," and that BOP would not grant "[r]equests for clothing accommodations," such as "undergarments that do not align with an inmate's biological sex." Dkt. 1-1, at 2, 3. The second memorandum provided, consistent with the EO, that "no [BOP] funds are to be expended for any medical procedure, treatment, or drug for the purpose of conforming an inmate's appearance to that of the opposite sex." Dkt. 1-2, at 2.

Under its initial PI entered on June 3, 2025, and its subsequent renewals of that order, the district court has prohibited BOP from implementing those memoranda. *See infra* pp. 6-8.

3.    In February 2026, BOP issued a new policy on medical care for inmates with gender dysphoria, superseding the 2025 implementing memoranda. *See* Dkt. 125 (Program Statement 5260.01, *Management of Inmates with Gender Dysphoria* (the 2026 Policy)). BOP explained that, "[i]n light of [the EO] and BOP's own independent judgment," it was adopting a "revised" approach to "treatment for gender dysphoria" that "is more aligned with the latest scientific information," "is tailored to the unique needs of the inmate," and "accounts for the complex security and administration concerns in the correctional environment." Dkt. 186-1, at 5,

4

7.  The 2026 Policy was issued after BOP undertook extensive reviews of relevant medical studies, medical expert opinions, state correctional policies, pertinent case law, and relevant prison administration and safety concerns. In support of this policy, BOP produced approximately 47 pages of explanation along with over 3,000 pages of documents in an Administrative Record.  *See* Dkt. 186-1, at 1-47; Dkt. 151 (index).  And BOP made clear that although the EO "supports this policy," BOP "also adopt[ed] this [new] policy independently of" the EO.  Dkt. 125, at 6.

Under the 2026 Policy, BOP will develop an individualized treatment plan for each inmate diagnosed with gender dysphoria, "tailored to the specific clinical needs of the inmate."  Dkt. 125, at 6.  Such plans would include, as appropriate, "psychotherapy, group counseling, psychiatric services, and psychotropic medications."  Dkt. 186-1, at 8; *see* Dkt. 125, at 6-7.  The 2026 Policy provides, however, that BOP will no longer provide "sex trait modification surgeries" or "social accommodations" to address gender dysphoria.  Dkt. 125, at 7, 8.  Nor will BOP provide hormones as treatment for gender dysphoria to inmates who are not already receiving hormones for that purpose.  *Id.* at 7.  For inmates who are currently receiving hormones, BOP will place them on individualized "tapering plan[s]" after "consider[ing] the appropriate factors."  *Id.*  The Policy also recognizes that, for some

5

inmates who have had sex trait modification surgeries or have been receiving hormones "for an extended period of time," "it may not be appropriate in all cases for the initial tapering plan to include cessation of hormones." *Id.* at 8.

### B.    This Litigation

**1.**    The named plaintiffs are three trans-identifying inmates who have been diagnosed with gender dysphoria and have received hormones and social accommodations to address their condition while in BOP custody. Add.7-10.  They brought this suit in March 2025 challenging the EO and the 2025 memoranda, and moved for a preliminary injunction based on claims under the Eighth Amendment and the APA. Dkt. 1; Dkt. 7; Dkt. 7-1.  Plaintiffs also asked the court to certify a class of similarly situated individuals.  Dkt. 8.

On June 3, 2025, the district court certified a class consisting of all inmates in BOP custody with a gender-dysphoria diagnosis and awarded plaintiffs a class-wide preliminary injunction based solely on their APA arbitrary-and-capricious claim.    Dkt. 68; *see* Add.5-40 (Dkt. 67) (PI opinion).  The court determined that "[t]he BOP's implementing memoranda f[e]ll short on" various arbitrary-and-capricious "criteria."    Add.25. Specifically, the court observed that the "*only* explanation" in the 2025 memoranda "for [BOP's] new policies [wa]s that the [EO] required the adoption of those policies"—which the court deemed insufficient—and that

6

to the extent "BOP may incorporate the Executive Order's reasoning into its own implementing memoranda, the reasoning contained therein" was also "deficient." Add.25-26. Additionally, the court concluded that BOP failed to consider the "effects that the new policies could have on transgender inmates" in issuing the 2025 implementing memoranda. Add.27. The court also concluded that plaintiffs faced irreparable harm in the form of side effects from gender dysphoria, Add.28-29, and that the other equitable factors favored plaintiffs, Add.29-31. Accordingly, the court stayed the 2025 implementing memoranda under 5 U.S.C. § 705, enjoined BOP from enforcing the EO or the 2025 memoranda as to hormones and social accommodations, and required BOP to continue providing hormones and social accommodations to class members "in accordance with BOP policy and practice in effect immediately prior to" the EO's issuance. Dkt. 68, at 2. The government did not appeal this preliminary injunction.

**2.** Pursuant to the Prison Litigation Reform Act (PLRA), the preliminary injunction expired 90 days after its entry. *See* 18 U.S.C. § 3626(a)(2). The court issued a new PI for another 90-day period following the expiration of the original PI, Dkt. 79, and has repeated that practice twice more, Dkt. 96; Dkt. 114. The court has referred to these as three "renew[ed]" preliminary injunctions, because they are meant to serve as extensions of—

7

and rely on the same analysis as—the original June 3, 2025 PI. *See* Dkt. 79, at 1 ("There are no newly discovered factual circumstances that necessitate a reassessment of this Court's prior holding that the Plaintiffs have met their burden for preliminary injunctive relief or that require a reevaluation of that relief."); Dkt. 96, at 2 (same); Dkt. 114, at 2 (same). The most recent of those renewed injunctions is set to expire on May 31, 2026. Dkt. 114, at 2.

3.     On April 1, 2026, the government moved to dissolve the current "renewed" PI, explaining that because the court's "sole basis" for the PI was BOP's purported failure to provide a reasoned explanation in the 2025 memoranda, the promulgation of the 2026 Policy—which does provide an in-depth explanation of BOP's reasoning—eliminated the only justification for the existing injunction. Dkt. 160, at 11. The court stayed briefing on the motion to dissolve to enable plaintiffs to file a supplemental complaint challenging the 2026 Policy and move for a new PI against that Policy. Dkt. 170. On April 29, plaintiffs moved for a new PI, relying on their Eighth Amendment and revised APA claims challenging the 2026 Policy. Dkt. 179-1, at 33, 42. The parties completed briefing on this motion on May 20, *see* Dkt. 194, and the court held a hearing on the motion on May 27.

4.     While briefing on the motion for a new PI was ongoing, plaintiffs filed an additional motion requesting that the district court extend the

8

existing injunction.  Dkt. 188.  Plaintiffs sought a "renewal of the existing preliminary injunction" to "maintain the status quo" and give the court additional time to act on the motion for a new PI against the 2026 Policy, if the court could not resolve the new motion before the expiration of the existing PI on May 31.  *Id.* at 1.  Plaintiffs sought this extended PI for a period beginning June 1 and ending fourteen days after the court's resolution of the pending motion for a new PI.  Dkt. 188-1, at 7.

The government opposed this motion, explaining that the PLRA "does not authorize renewing a preliminary injunction on a policy that has been superseded simply 'to maintain the status quo.'"  Dkt. 192, at 5.  Rather, plaintiffs must satisfy the traditional four-part test for injunctive relief, which plaintiffs could not do based only "on their prior showing when the Court initially issued the preliminary injunction in June 2025" in light of "the changed circumstances of the 2026 Policy."  *Id.* at 4.

**5.**     On May 26, the district court granted plaintiffs' request to extend the existing PI.  *See* Add.1-4 (Dkt. 202).  The court stated that "[a]lthough there are new factual circumstances in this case, ... none necessitate a reassessment at this juncture of [its] prior holding that the [p]laintiffs have met their burden for preliminary injunctive relief or require a reevaluation of that relief pending disposition of" plaintiffs' motion for a new PI.  Add.2.

The court did not acknowledge that its earlier PIs were all based solely on the APA arbitrary-and-capricious claim challenging the 2025 memoranda. And the court did not attempt to explain why plaintiffs were entitled to an extension of existing PI relief notwithstanding the "new factual circumstances." Add.2.

Having found that it was appropriate to "extend" its existing PI while it "decid[ed] the pending motion" for a new PI against BOP's 2026 Policy, Add.2, the district court enjoined BOP "from implementing Section 4(c) of [the EO] against any class member in this action" and ordered BOP to "maintain access to [BOP's prior] treatment modalities," Add.3. The court provided that its injunction would run "for a period … beginning June 1, 2026 and ending fourteen calendar days following" the "resolution of [p]laintiffs' pending [m]otion" for a new PI. Add.3.

At a hearing on May 27, 2026, the government informed the district court that the government intended to appeal the May 26 injunction and requested a stay pending appeal under Fed R. App. P. 8(a). The court directed the government to file a motion. The same day, the government filed a motion reiterating its stay request and seeking a ruling by May 28. Dkt. 204. Later that day, the court set a briefing schedule on the government's stay motion, with plaintiffs' response due June 1 and the

10

government's reply due June 3.  *See* May 27, 2026 Minute Order.  The court thus indicated that it did not intend to rule on the stay motion by the government's requested deadline.

### ARGUMENT

In considering a stay pending appeal, this Court considers the likelihood of success on the merits, the movant's irreparable injury, the balance of harms, and the public interest.  *Nken v. Holder*, 556 U.S. 418, 426 (2009).  "The most critical of these factors is the likelihood of success on the merits."  *Make the Rd. New York v. Noem*, No. 25-5320, 2025 WL 3563313, at \*38 (D.C. Cir. Nov. 22, 2025) (Rao, J., dissenting).  These factors strongly support a stay here.

## I.    The Government Is Likely To Prevail On The Merits.

### A.    The preliminary injunction is improperly based on a claim that is moot and abandoned.

The district court based its issuance of the May 26 PI extension order on its "prior holding that the Plaintiffs have met their burden for preliminary injunctive relief."  Add.2 (referencing Add.21-31).  That approach was not permissible given the changed circumstances in this case.

**1.**    To meet his burden of demonstrating entitlement to a preliminary injunction, a plaintiff must "establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of

11

preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A preliminary injunction cannot issue if plaintiffs fail to satisfy any of these factors. *See id.* at 32; *see also Centro de Trabajadores Unidos v. Bessent*, 167 F.4th 1218, 1239 (D.C. Cir. 2026) (failure to show likelihood of success on the merits); *Clevinger v. Advoc. Holdings, Inc.*, 134 F.4th 1230, 1235-36 (D.C. Cir. 2025) (failure to show irreparable harm).

Here, the district court issued its May 26 PI based solely on the likelihood-of-success-on-the-merits determination that the court made back in June 2025. *See* Add.2; Add.21-27. In issuing the original PI order, however, the court found a likelihood of success on the merits of plaintiffs' APA claim that the 2025 implementing memoranda were arbitrary and capricious for failing to provide sufficient explanation. That APA claim specifically targeted "BOP's [2025] implementing memoranda." Add.25; *see* Dkt. 1, at 26-29 (Count 5: "Challenge to the Implementing Memoranda"). Those memoranda, which reflected BOP's 2025 policy, have now been superseded by a new agency action: the 2026 Policy, as reflected in Program Statement 5260.01. *See* Dkt. 125. Because "no decision by this court would do anything to affect the [2025] Policy or the plaintiff class members' rights relative to it" given its recission, *Samma v. Dep't of Def.*, 136 F.4th 1108, 1114

12

(D.C. Cir. 2025), plaintiffs' APA claim challenging the 2025 memoranda has become moot.

Plaintiffs do not dispute that their APA claim challenging the superseded 2025 memoranda is now moot. The government made this argument in opposing plaintiffs' motion for a new PI, *see* Dkt. 186, at 14, and plaintiffs did not dispute mootness. Instead, plaintiffs affirmatively disclaimed that they were still pursuing any claims challenging the 2025 memoranda, noting that they abandoned those claims when they filed a supplemental complaint challenging BOP's 2026 Policy. *See* Dkt. 194, at 3 n.1 ("Defendants also assert that the Court lacks jurisdiction to hear challenges to the February 2025 policies BOP adopted to effectuate the EO. Plaintiffs excised those challenges through their Supplemental Complaint. Thus, Defendants' arguments on this issue are, themselves, moot.").

The district court fundamentally erred in issuing a preliminary injunction premised on plaintiffs' likelihood of success on a moot claim that plaintiffs expressly abandoned.

**2.** To obtain a preliminary injunction—"an 'extraordinary' equitable remedy that is 'never awarded as of right'"—a plaintiff "must make a clear showing that" he satisfies each of the four PI factors. *Starbucks Corp. v. McKinney*, 602 U.S. 339, 345-46 (2024) (quoting *Winter*, 555 U.S. at 24).

Because "likelihood of success is an independent, free-standing requirement for a preliminary injunction," even a "strong showing" on another factor could not "make up for a failure to demonstrate a likelihood of success on the merits." *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1296 (D.C. Cir. 2009) (Kavanaugh, J., concurring).  Accordingly, where a plaintiff fails to clear this initial hurdle, the Court need not "'proceed to review the other three preliminary injunction factors.'" *Guedes v. ATF*, 920 F.3d 1, 10 (D.C. Cir. 2019) (per curiam) (citation omitted).

In any event, the district court expressly declined to "reassess[]" or "reevaluat[e]" the other PI factors.  Add.2.  And since the 2025 memoranda that were the purported source of plaintiffs' threatened harms have been superseded, the earlier bases for the court's finding of irreparable harm and its equitable balancing no longer exist.

The district court invoked "the interest of justice and judicial economy" in support of "briefly extend[ing] this preliminary injunction."  Add.2. Regardless of the strength of these equitable considerations, they cannot supply a basis for granting a PI in the absence of any assessment of the likelihood of success on the merits, let alone any assessment of the equities of plaintiffs' current claims.

14

### B. Plaintiffs' defunct APA claim does not support relief against the EO generally.

The government is also likely to succeed in demonstrating that plaintiffs' defunct APA claim cannot justify the broad scope of preliminary relief entered by the district court.

Executive orders are not subject to APA review. *See Dalton v. Specter*, 511 U.S. 462, 470 (1994) ("The actions of the President ... are not reviewable under the APA[.]"). And under the APA, plaintiffs can only challenge "final agency action." 5 U.S.C. § 704. Accordingly, plaintiffs' now-defunct APA claim sought to challenge the 2025 implementing memoranda, specifically, as final agency actions that were allegedly arbitrary and capricious. *See* Dkt. 1, at 26-29. And in finding that relief was warranted on plaintiffs' APA claim, the district court specifically concluded that the 2025 memoranda were deficient only under the APA's arbitrary-and-capricious standard. *See* Add.21 (finding the 2025 memoranda "arbitrary and capricious because they provide no reasoned explanation for the denial of gender-affirming care, treat gender dysphoria different than other medical conditions with no justification, and fail to adequately take stock of the sudden reversal in agency policy from before the Executive Order was issued").

In its May 26 order, however, the district court more broadly enjoined the government from "implementing Section 4(c) of Executive Order 14168

against any class member in this action." Add.3. This relief is not limited to the specific agency actions that the court found to be deficient under the APA—the now-superseded 2025 memoranda—but instead enjoins entirely distinct agency actions, the legality of which the court has not yet assessed. Indeed, the purpose of the broadly worded injunction was to prohibit implementation of BOP's 2026 Policy before the court made any determination regarding the legality of that new policy (an issue that is now fully briefed and ripe for disposition on plaintiffs' *new* PI motion), in complete disregard of BOP's explanation that it "also adopt[ed] this [2026] policy independently of" the EO. Dkt. 125, at 6.

A district court cannot properly bootstrap its prior finding of a likelihood of success on the merits of an APA challenge to one agency action as the basis to enjoin an entirely separate agency action that requires a materially different analysis. *Cf. New York Times Co. v. U.S. Dep't of Def.*, No. 26-5113, 2026 WL 1179440, at *3 (D.C. Cir. Apr. 27, 2026) (per curiam) (granting stay of order blocking a revised policy on the ground that the revised policy was not encompassed by the summary judgment vacating the original policy); *Doe 2 v. Shanahan*, 755 F. App'x 19, 23 (D.C. Cir. 2019) (per curiam) (vacating PI of original policy after agency took "substantial steps to cure [that policy's] procedural deficiencies" through a "significant[ly]

16

change[d]" policy). Otherwise, courts could effectively enjoin any executive order by invalidating one agency action taken to implement the order under the APA and using that as a basis to enjoin the government from implementing the executive order through any other means, regardless of whether those means suffer the same alleged APA defects or not.

Plaintiffs seeking that kind of sweeping relief against an executive order must prevail on a constitutional or statutory challenge warranting such relief. They cannot obtain the same result through the APA, *see Franklin v. Massachusetts*, 505 U.S. 788, 800-01 (1992), much less through the use of prior findings on an APA claim that is moot and abandoned.

### C. The district court lacked authority to extend the existing preliminary injunction under the Prison Litigation Reform Act.

In granting plaintiffs' motion to extend the existing PI, the court claimed authority under the PLRA. *See* Add.2 ("[D]istrict courts—including this one—regularly renew or extend preliminary relief for additional periods under the Prison Litigation Reform Act while litigation on the merits of a case continue."). But neither the PLRA nor any recognized principle of equity authorizes a court to enjoin a superseding BOP policy based on abandoned challenges to a prior, defunct policy. Because the circumstances

17

have fundamentally changed, the district court erred in mechanically extending its prior injunction.

**1.**     As relevant here, the PLRA provides that, "[i]n any civil action with respect to prison conditions," any "[p]reliminary injunctive relief" granted by a court "shall automatically expire on the date that is 90 days after its entry." 18 U.S.C. § 3626(a)(2).  Nothing in the statutory text expressly permits preliminary injunctions to be extended beyond their 90-day automatic expiration.  Accordingly, the PLRA did not authorize the district court here to extend the existing PI order that is set to terminate by operation of law on May 31.

**2.**     The cases cited by the district court, Add.2-3, are not to the contrary.  Those cases recognize the possibility that a court may issue a *new* preliminary injunction after the original injunction has expired under the PLRA.  *See Mayweathers v. Newland*, 258 F.3d 930, 936 (9th Cir. 2001) ("Nothing in the statute limits the number of times a court may enter preliminary relief."); *Alloway v. Hodge*, 72 F. App'x 812, 817 (10th Cir. 2003) (same); *Doe v. Blanche*, 172 F.4th 901, 912 (D.C. Cir. 2026) (declining to resolve whether "section 3626(a)(2) limits a district court's ability to issue a

18

new preliminary injunction at the end of the ninety-day period set forth in that statute").[3]

It is far from clear that the PLRA permits courts to issue a new preliminary injunction following the expiration of an original PI order. *See Doe*, 172 F.4th at 926-30 (Randolph, J., dissenting) (opining, based on "text, structure, and contemporaneous legislative understanding," that the PLRA does not permit courts to evade the 90-day clock by "repeatedly reissu[ing] successive preliminary injunctions"). But even assuming that practice is permissible in some circumstances, it still would not support the PI extension order at issue here. Any successive preliminary injunction under the PLRA must "address the current situation." *Monroe v. Bowman*, 122 F.4th 688, 697 (7th Cir. 2024). Thus, to warrant such a successive PI order, plaintiffs must "continue to prove that preliminary relief is warranted." *Mayweathers*, 258 F.3d at 936. In other words, for each new PI order, the requirements for issuing a preliminary injunction under *Winter* must be satisfied. *See* 18 U.S.C. § 3626(a)(2) (providing that "*to the extent otherwise*

---

[3] The PLRA also permits PI orders to be extended indefinitely if a district court makes the requisite findings "and makes the order final before the expiration of the 90-day period." 18 U.S.C. § 3626(a)(2); *see Smith v. Edwards*, 88 F.4th 1119, 1125 (5th Cir. 2023). Here, there is no dispute that the district court has not converted its preliminary injunction into final prospective relief.

19

*authorized by law*, the court may enter ... an order for preliminary injunctive relief" (emphasis added)).  The district court made no attempt to assess whether those requirements were satisfied here, and that defect alone compels vacatur of the PI.  *See supra* Part I.A.

## II.    The Remaining Factors Favor A Stay

The equitable factors likewise favor a stay, and "the public interest and balance of equities factors merge" where, as here, "the government is the party" against whom an injunction is sought.  *MediNatura, Inc. v. FDA*, 998 F.3d 931, 945 (D.C. Cir. 2021).

The government suffers irreparable harm when a district court's injunction against it "exceed[s] the authority conferred" on the court by statute.  *Trump v. CASA, Inc.*, 606 U.S. 831, 860 (2025).  The court's May 26 PI order plainly does so.  The PLRA makes clear that preliminary injunctive relief in the prison context must be sharply limited in both duration and scope.  *See* 18 U.S.C. § 3626(a)(2); *Doe*, 172 F.4th at 928 (Randolph, J., dissenting) (PLRA was "crafted to curtail the intrusive, open-ended judicial supervision" of prisons).  The district court overstepped those limitations by "extend[ing]" its existing PI order beyond the PLRA's 90-day limit, without either complying with the PLRA's express requirements for doing so or

20

making the findings necessary to justify the issuance of a new PI.  Add.2; *see* 18 U.S.C. § 3626(a)(2).

By prohibiting BOP from implementing its 2026 Policy without any assessment of the legality of that policy, the district court's May 26 PI causes irreparable harm to the Executive Branch's ability to implement policies for the safe and secure operation of federal prisons.  *See CASA*, 606 U.S. at 861 ("Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." (alteration omitted) (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers))); *Talbott v. United States*, No. 25-5087, 2025 WL 3533344, at *11 (D.C. Cir. Dec. 9, 2025) (Katsas, J., concurring) ("Injunctions that 'improperly intrude' on the Executive Branch often inflict irreparable injury[.]").  Indeed, for more than a year, the President has been prevented from implementing his policy determinations concerning the provision of appropriate medical care by BOP.  These policies are closely intertwined with prison administration and security, *e.g.*, Dkt. 186-1, at 18-20, 28-30, an area in which the Executive Branch properly enjoys broad deference, *see Hatim v. Obama*, 760 F.3d 54, 59 (D.C. Cir. 2014).  And the policies are aimed at averting both medical and safety risks to inmates who are in BOP's custody and care.  *E.g.*, Dkt. 186-1, at 25-33.  The government

21

thus has compelling interests in being able to effectuate these policies promptly and without patently unlawful intrusion by a district court. *See Turner v. Safley*, 482 U.S. 78, 89 (1987) ("[P]rison administrators, and not the courts, are to make the difficult judgments concerning institutional operations." (cleaned up)).

Conversely, plaintiffs have not demonstrated that a stay would cause them irreparable harm or that the balance of equities tips in their favor. Indeed, as discussed *supra* p. 14, the district court failed to even consider whether plaintiffs face irreparable harm under the "new factual circumstances" presented by the 2026 Policy. Add.2. They do not. Under the 2026 Policy, BOP would engage in individualized assessments of the medical needs of inmates with gender dysphoria and formulate individualized treatment plans that involve the tapering of hormone treatment and the provision of psychotherapy and other appropriate treatment. *See* Dkt. 125, at 7-8. And the 2026 Policy recognizes that in narrow circumstances "cessation of hormones" "may not be appropriate" in an inmate's "initial tapering plan." *Id.* at 8. Moreover, even if plaintiffs could make the demanding showings necessary to establish class-wide entitlement to preliminary injunctive relief, the district court can grant such relief on their pending motion for a new preliminary injunction against the 2026

22

Policy, rather than unlawfully enjoining the government on the basis of purported deficiencies in superseded 2025 memoranda.

The balance of equities and public interest, which "merge" here, *MediNatura*, 998 F.3d at 945, thus decidedly favor the government. These factors counsel in favor of permitting BOP to pursue the President's policy determinations and to act on its expert judgment concerning the provision of medical care in prisons. There is no basis for the categorical invalidation of the 2026 Policy before it has gone into effect, much less for prohibiting implementation of that policy based solely on findings with respect to a moot and abandoned claim challenging an earlier policy.

23

# CONCLUSION

This Court should grant an immediate administrative stay and issue a stay pending appeal.  We respectfully request that the Court act on either request by Monday, June 1, 2026.

Respectfully submitted,

BRETT A. SHUMATE
 *Assistant Attorney General*

ERIC D. McARTHUR
 *Deputy Assistant Attorney General*

MARK R. FREEMAN
CHARLES W. SCARBOROUGH
McKAYE L. NEUMEISTER
 */s/ Domenic A. Canonico*
DOMENIC A. CANONICO
 *Attorneys, Appellate Staff*
 *Civil Division*
 *U.S. Department of Justice*
 *950 Pennsylvania Avenue NW*
 *Washington, DC 20530*
 *(202) 305-1754*

24

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 4,976 words.  This motion also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in 14-point Georgia, a proportionally spaced typeface.

/s/ Domenic A. Canonico
Domenic A. Canonico