No. 26-5181

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————————

ALISHEA KINGDOM, et al.,

*Plaintiffs-Appellees*,

v.

DONALD J. TRUMP, in his official capacity as
President of the United States, et al.,

*Defendants-Appellants.*

———————————————

On Appeal from the United States District Court
for the District of Columbia

———————————————

## PLAINTIFFS-APPELLEES' BRIEF IN OPPOSITION TO EMERGENCY
## MOTION FOR STAY PENDING APPEAL

———————————————

Li Nowlin-Sohl
Leslie Cooper
Shana Knizhnik
James D. Esseks
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
212-549-2500
lnowlin-sohl@aclu.org

Aditi Shah
Michael Perloff
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF THE
DISTRICT OF COLUMBIA
529 14th Street NW, Suite 722
Washington, DC 20045
202-457-0800
ashah@acludc.org
mperloff@acludc.org

lcooper@aclu.org
sknizhnik@aclu.org
jesseks@aclu.org

David C. Fathi
Maria V. Morris
Elisa C. Epstein
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th Street NW
Washington, DC 20005
202-393-4930
dfathi@aclu.org
mmorris@aclu.org
eepstein@aclu.org

Corene T. Kendrick
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104
202-393-4930
ckendrick@aclu.org

Shawn Thomas Meerkamper
Megan Z. F. Noor
Dale Melchert
TRANSGENDER LAW CENTER
PO Box 70976
Oakland, CA 94612
510-587-9696
shawn@transgenderlawcenter.org
megan@transgenderlawcenter.org
dale@transgenderlawcenter.org

Lynly S. Egyes
TRANSGENDER LAW CENTER
594 Dean Street, Suite 11
Brooklyn, NY 11238
510-587-9696
lynly@transgenderlawcenter.org

*Counsel for Plaintiffs-Appellees*

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................1

STATEMENT OF FACTS AND PROCEDURAL HISTORY .................................2

STANDARD OF REVIEW ...................................................................................10

ARGUMENT ........................................................................................................11

    I.     Defendants Fail To Establish That They Will Be Irreparably
          Injured Absent a Stay. .............................................................................11

    II.    A Stay Would Irreparably Harm Plaintiffs And The Class And
          Is Contrary To The Public Interest. ........................................................14

    III.   Defendants Are Not Substantially Likely To Succeed On The
          Merits. ......................................................................................................16

CONCLUSION .....................................................................................................19

## INTRODUCTION

One year ago, the district court in this matter found that Plaintiffs satisfied all four preliminary injunction factors and issued a preliminary injunction, enjoining Defendants from enforcing their categorical ban on gender-affirming health care for people with gender dysphoria in Bureau of Prisons ("BOP") custody mandated by a Presidential Executive Order. Defendants did not appeal. Defendants now come to this Court seeking the extraordinary relief of an emergency stay pending appeal of the district court's May 26, 2026 order renewing the preliminary injunction while the court decides Plaintiffs' motion for an updated preliminary injunction. This Court should deny Defendants' motion.

Defendants seek a stay because, in their view, a Program Statement that BOP issued eight months after the district court originally entered the preliminary injunction moots the basis for the court's May 26 order. The Program Statement, however, imposes the same categorical ban on gender-affirming health care that the operative preliminary injunction prohibits.

There is no "emergency" here. As Defendants acknowledge, Plaintiffs' motion for an updated preliminary injunction on the Program Statement is "fully briefed and ripe for disposition" before the district court. Mot. 16. In its June 2, 2026 denial of Defendants' motion to stay the May 26 order, the district court noted that it is deciding Plaintiffs' motion for an updated preliminary injunction on an "expedited

1

basis" and that it is "in the interest of justice" and "judicial economy" to deny Defendants' motion to stay "in the short window that it takes th[e] [c]ourt to rule on the pending motion." Dkt. 210.

Defendants plainly fail to demonstrate that being unable to enforce the Program Statement in this "short window," *id.*, before the district court rules on the updated preliminary injunction motion will cause them irreparable harm, "a necessary prerequisite for a stay." *KalshiEX LLC v. Commodity Futures Trading Comm'n*, 119 F.4th 58, 64 (D.C. Cir. 2024). Nor have they shown that a stay will not substantially injure Plaintiffs and the class or that the public interest favors a stay. They fall far short of establishing an emergency warranting a stay that would disrupt the status quo as it has existed for years (prior to the Executive Order and for the past year under the preliminary injunction) while the district court expeditiously decides Plaintiffs' motion for an updated preliminary injunction.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Gender dysphoria is a serious medical condition characterized by significant distress and/or social or occupational impairment caused by the incongruence between a person's gender identity and their sex assigned at birth. Add.7. Absent effective treatment, people with gender dysphoria can experience depression, anxiety, self-harm, and suicidality. *Id.* Plaintiffs, who are in BOP custody and have been diagnosed with gender dysphoria, have relied for years on treatment provided

by BOP to alleviate this condition—hormone therapy and accommodations that allow them to live consistently with their gender identity. Add.7-10. Prior to the preliminary injunction enjoining the categorical ban on this treatment, Plaintiff Alishea Kingdom suffered anxiety, panic attacks, and suicidal ideation, and contemplated self-castration as a result of the discontinuation of her hormone therapy, Add.8, Add.29, and Plaintiffs Solo Nichols and Jas Kapule feared the consequences they would face, including the return of their menstrual cycles, depression, and more should their treatment be discontinued. Add.9-10.

**1. The EO and BOP's actions prior to this lawsuit.** On his first day back in office, President Trump issued Executive Order 14168, *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*, 90 Fed. Reg. 8615 (Jan. 20, 2025) ("EO 14168"). The EO provides that "[i]t is the policy of the United States to recognize two sexes, male and female," and "[t]hese sexes are not changeable." EO 14168 § 2. As relevant here, the EO requires BOP to "revise[] its policies concerning medical care to be consistent with this order" and to "ensure that no Federal funds are expended for any medical procedure, treatment, or drug for the purpose of conforming an inmate's appearance to that of the opposite sex." EO 14168 § 4(c).

BOP proceeded to do what the EO commanded. Plaintiff Kingdom's usual hormone therapy was denied on January 26, February 6, and February 12, 2025.

Add.8. Plaintiff Nichols was given a lower dose than his prescribed dosage for his hormone therapy on February 12, 2025 and was told by BOP that his next dose would be even less and after that his treatment would be discontinued. Add.9. And BOP staff told Plaintiff Kapule sometime between January 23, 2025 and March 12, 2025 that his hormone therapy would be discontinued when his prescription ran out. Add.10. BOP also withheld accommodations for social transition such as chest binders and feminine undergarments or boxers ("social accommodations") from all three Plaintiffs. Add.8-10.

BOP also issued memoranda implementing the EO. On February 21, 2025, it issued a memorandum prohibiting the use of appropriated funds to purchase social accommodations and requiring requests for clothing such as undergarments "that do not align with an [individual's] biological sex" to be denied. Dkt. 1-1 at 2-3. On February 28, 2025, BOP issued a second implementing memorandum providing that "[c]onsistent with" the EO, no BOP funds "are to be expended for any medical procedure, treatment, or drug for the purpose of conforming an inmate's appearance to that of the opposite sex." Dkt. 1-2 at 2.

*2. Plaintiffs bring this lawsuit and obtain a preliminary injunction.* Plaintiffs initiated this case on March 7, 2025, challenging the EO and BOP's implementation of the EO as unconstitutional under the Eighth and Fifth Amendments to the U.S. Constitution and unlawful under the Administrative Procedure Act ("APA") and the

Rehabilitation Act of 1973. Dkt. 4. They moved for class certification and for a preliminary injunction on their Eighth Amendment and APA claims. Dkt. 7, Dkt. 8.

On June 3, 2025, the district court granted both motions. Dkt. 68. It certified a class consisting of "all persons who are or will be incarcerated in the custody of BOP facilities, with a current medical diagnosis of gender dysphoria or who receive such a diagnosis in the future." *Id.* at 1. It also preliminarily enjoined Defendants "from enforcing Executive Order 14168 as applied to medical hormone therapy and social accommodations for people in the custody of the BOP and from enforcing the BOP's memoranda implementing Executive Order 14168" and required Defendants to "provide and continue providing Plaintiffs and members of the class gender-affirming hormone therapy and social accommodations in accordance with BOP policy and practice in effect immediately prior to Defendant Trump's issuance of Executive Order 14168 on January 20, 2025." *Id.* at 2.

In issuing the preliminary injunction, the court concluded that Plaintiffs were likely to succeed on the merits of their APA claims and declined to reach Plaintiffs' Eighth Amendment claim. Add.21. First, it held that "BOP's actions taken pursuant to [the EO], including the implementing memoranda" were final agency actions because it was clear that BOP "made up its mind with respect to the plaintiffs' gender-affirming care" as of the filing of the complaint by withholding social accommodations and discontinuing or deciding to discontinue Plaintiffs' hormone

therapy. Add.22-23.

Second, the court held that Plaintiffs were likely to succeed in showing that BOP's actions were arbitrary and capricious. Add.24. The court determined that "neither the BOP nor the Executive Order," which BOP relied on to justify its decision to discontinue hormone therapy and withhold social accommodations to treat gender dysphoria, "provides any serious explanation as to why the treatment modalities covered by the Executive Order or implementing memoranda should be handled differently than any other mental health intervention." Add.26.

Under the Prison Litigation Reform Act ("PLRA"), preliminary injunctive relief in any civil action related to prison conditions "shall automatically expire" 90 days after the entry of the preliminary injunction. 18 U.S.C. § 3626(a)(2). Plaintiffs accordingly have moved to renew the preliminary injunction in advance of each 90-day period. For each renewal motion except the most recent one, Defendants opposed solely on the grounds that preliminary injunctions automatically expire after 90 days under the PLRA and the BOP's implementation of the EO is (in their view) consistent with the law, without filing any further opposition. *E.g.*, Dkt. 78-1 at 1-2; Dkt. 93-1 at 2. The district court has granted each such motion for a renewed preliminary injunction.

Defendants did not appeal the original preliminary injunction or any of its renewals until their appeal of the May 26 order.

*3. BOP's 2026 Program Statement.* On February 19, 2026, BOP issued Program Statement 5260.01, entitled "Management of Inmates with Gender Dysphoria" (the "Program Statement"). Dkt. 125. The Program Statement mirrors language from the EO and the implementing memoranda, stating that its intent "is for federal funds to not be expended for any medical procedure, treatment, or drug for the purpose of conforming an inmate's appearance to that of the opposite sex to the maximum extent permitted by law." *Id.* ¶ 8. The Program Statement (1) acknowledges that the EO requires this, (2) recognizes that, although BOP claims that it "also adopts this [Program Statement] independently of" the EO, the EO "supports this policy," and (3) affirms that BOP will comply with the EO absent a court order prohibiting such compliance. *Id.* ¶ 5.

Like the implementing memoranda and EO, the Program Statement prohibits hormone therapy and social accommodations to address gender dysphoria. It categorically bans the initiation of hormone therapy for people with gender dysphoria, stating that for those who are diagnosed with gender dysphoria but are not currently receiving hormones, BOP "will not provide hormones to address [gender dysphoria] and the [individual] will not receive hormones to address [gender dysphoria]." *Id.* ¶ 5(c)(i). For people currently receiving hormone therapy to address gender dysphoria, the Program Statement requires that they be "tapered off"—*i.e.*, cut off—the hormones. *Id.* ¶ 5(c)(ii). It mandates a "tapering plan" for "all such

7

[individuals]"; for people who "are post sex trait modification surgery" or who have been on hormones "for an extended period of time and develop severe physiological *and* psychological withdrawal effects from tapering," the Program Statement recognizes it "may not be appropriate in *all cases* for the *initial* tapering plan to include *cessation* of hormones," but even their tapering plans "should be *reevaluated regularly with respect to cessation* of hormones." *Id.* (emphases added).

The Program Statement also categorically bans all social accommodations, including gender-affirming clothing, stating that BOP "will not provide social accommodations" and individuals "will not receive social accommodations." *Id.* ¶ 5(d). If a person currently has social accommodations, BOP will "no longer provide the social accommodations and, when practicable, remove or confiscate the social accommodations." *Id.*

On April 1, 2026, Defendants moved to dissolve the preliminary injunction based on the Program Statement. Dkt. 160. Plaintiffs moved to stay briefing on Defendants' motion to dissolve while Plaintiffs filed a supplemental complaint addressing the Program Statement and moved for an updated preliminary injunction to enjoin Defendants from enforcing the Program Statement. Dkt. 166. The district court granted Plaintiffs' motion to stay on April 15, Dkt. 170, and Plaintiffs filed their supplemental complaint and motion for an updated preliminary injunction on April 29. Dkt. 178; Dkt. 179; Dkt. 180 (order granting Plaintiffs' motion for leave to

8

file supplemental complaint). Plaintiffs' motion for an updated preliminary injunction was fully briefed on May 20, and the court heard argument on the motion on May 27. As of this date (June 4), the court has not yet ruled on Plaintiffs' motion.

*4. The May 26 Order*. Pursuant to the PLRA's automatic 90-day expiration provision, the existing preliminary injunction was set to expire on May 31, 2026. To ensure that Plaintiffs and class members would be protected against the withdrawal of hormone therapy and social accommodations in the event the court did not decide their motion by May 31, they filed a motion for a renewed preliminary injunction asking the court to enjoin Defendants from implementing § 4(c) of the EO "for a period (not to exceed 90 days) beginning June 1, 2026 and ending fourteen calendar days following [the district court's] resolution of Plaintiffs' pending Motion for an Updated Preliminary Injunction" and requiring BOP to "restore and maintain access to those treatment modalities for those who previously received them pursuant to a prescription rendered by BOP staff." Dkt. 188-2.

On May 26, the district court granted Plaintiffs' motion, recognizing that "there are new factual circumstances in this case," but holding that none of these new circumstances warranted reassessing the court's "prior holding that the Plaintiffs have met their burden for preliminary injunctive relief" or reevaluating that relief "pending disposition of the Pending Preliminary Injunction Motion." Add.2. The court further held that it was in "the interest of justice and judicial

economy to briefly extend this preliminary injunction while the Court is deciding the pending motion for an updated preliminary injunction." *Id.*

Defendants appealed the district court's May 26 order. They filed a motion to stay the order pending appeal in the district court, which the district court denied on June 2, Dkt. 210, concluding that Defendants have failed to show irreparable harm. Specifically, the court noted that "[t]he only harm that Defendants claim is an inability to formally implement the 2026 Program Statement" while the court decides Plaintiffs' motion "on an already expedited basis," which the court found insufficient to establish irreparable harm. *Id.* The court also held that it is not "in the interest of justice or judicial economy for BOP to implement the [Program Statement] in the short window that it takes th[e] [c]ourt to rule on the pending motion." *Id.* Defendants also filed the instant "emergency" motion for a stay. This Court should deny Defendants' motion for the reasons that follow.

**STANDARD OF REVIEW**

A stay pending appeal is an "extraordinary" remedy. *Citizens for Resp. & Ethics in Wash. v. Fed. Election Comm'n*, 904 F.3d 1014, 1017 (D.C. Cir. 2018) (per curiam). "To obtain such exceptional relief, the stay applicant must (1) make a 'strong showing that [it] is likely to succeed on the merits'; (2) demonstrate that it will be 'irreparably injured' before the appeal concludes; (3) show that issuing a stay will not 'substantially injure the other parties interested in the proceeding'; and

(4) establish that 'the public interest' favors a stay." *KalshiEX LLC v. Commodity Futures Trading Comm'n*, 119 F.4th 58, 63 (D.C. Cir. 2024) (alteration in original) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). The balance of equities and public interest merge in cases against the government. *Nken*, 556 U.S. at 435.

## ARGUMENT

**I.      Defendants Fail To Establish That They Will Be Irreparably Injured Absent a Stay.**

"[A] showing of irreparable harm is a necessary prerequisite for a stay." *KalshiEX LLC*, 119 F.4th at 64. The harm warranting a stay "must be 'both certain and great,' 'actual and not theoretical,' 'beyond remediation,' and 'of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm.'" *Mexichem Specialty Resins, Inc. v. E.P.A.*, 787 F.3d 544, 555 (D.C. Cir. 2015) (quoting *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)). Defendants fail to meet this stringent requirement here.

Defendants contend that they will suffer irreparable harm because the district court's order, in their view, "'exceed[s] the authority conferred' on the court by [the PLRA]." Mot. 20 (quoting *Trump v. CASA, Inc.*, 606 U.S. 831, 860 (2025)). For the reasons discussed below, *infra* pp. 16-18, the district court did not exceed its authority. In any event, Defendants fail to acknowledge that the preliminary injunction they seek to stay on a purported "emergency" basis maintains the status quo as it has existed for years prior to the EO (with BOP providing gender-affirming

health care), including for the past year pursuant to the preliminary injunction that Defendants did not appeal until last week. Such delays undermine claims of irreparable harm. *See Fund for Animals v. Frizzell*, 530 F.2d 982, 987 (D.C. Cir. 1975) (per curiam).

Moreover, Defendants entirely fail to show that the harm they allege is "of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm." *Mexichem Specialty Resins*, 787 F.3d at 555 (quoting *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297). Defendants provide nothing to show why they must be able to enforce the Program Statement *now*, in the "short window" before the district court rules "on an already expedited basis" on Plaintiffs' pending motion for an updated preliminary injunction. Dkt. 210. They do not offer any reason they must be permitted to begin enforcing the Program Statement—which requires cutting individuals off their hormone therapy and confiscating and discontinuing social accommodations—immediately and even if only for a short time. They make generalized references to "prison administration and security" and "medical and safety risks" to individuals in BOP custody, Mot. 21, but those are all purported factual justifications that are being assessed and weighed by the district court as part of Plaintiffs' motion for an updated preliminary injunction. Defendants offer no reason for this Court to weigh in on these issues before the district court does.

Nor do Defendants provide any basis for this Court to intervene on their behalf

12

in this extraordinary posture, where it does not have the benefit of the briefing and the evidentiary record that the district court is expeditiously considering in relation to Plaintiffs' pending motion. If Defendants truly believe it is so critical for them to immediately enforce the Program Statement, they could have sought emergency relief months earlier when BOP issued the February 19, 2026 Program Statement— indeed, given that Defendants knew the Program Statement was "soon" forthcoming since at least November 25, 2025, Dkt. 104 at 2, they could have opposed Plaintiffs' February 5, 2026 motion to renew the preliminary injunction on that basis instead of providing their boilerplate opposition language for Plaintiffs to include in their motion. Dkt. 111-1 at 2. Instead, Defendants waited for over *five weeks* after the Program Statement was issued before they moved to dissolve the preliminary injunction. Dkt. 160. Defendants do not point to any change in facts to suggest that what remained nonurgent for over *three months* suddenly has become so critical that it warrants the exceptional relief they seek here.

Given that Defendants are unable to point to any irreparable harm they would incur from being unable to enforce the Program Statement at this time, and for what may be a very short time in light of the district court's forthcoming ruling "on an already expedited basis," Dkt. 210, Defendants plainly fail to meet their burden, and this Court should deny Defendants' motion on that basis alone. *See, e.g.*, *KalshiEX LLC*, 119 F.4th at 64.

13

**II. A Stay Would Irreparably Harm Plaintiffs And The Class And Is Contrary To The Public Interest.**

In stark contrast, a stay pending appeal would cause imminent and severe irreparable harm to Plaintiffs and class members. As the district court noted when it granted the original preliminary injunction, "gender dysphoria can produce severe side effects ranging from depression and anxiety to suicidal ideation and self-harm if inadequately treated." Add.28-29. Discontinuing Plaintiff Kingdom's hormone therapy caused her to suffer suicidal thoughts and to regularly contemplate self-castration. *Id.* Doing so again to her and cutting the other Plaintiffs and class members off their hormone therapy, as well as confiscating and prohibiting all social accommodations—as the Program Statement requires—would cause the same injuries that the preliminary injunction is in place to prevent.

Defendants fail to show that Plaintiffs will not be substantially injured if a stay is granted. Their only contention, that the Program Statement provides for "individualized treatment plans," Mot. 22, ignores that those treatment plans categorically exclude hormone therapy and social accommodations and in fact involve discontinuing individuals' hormone therapy. In any event, Defendants' arguments with respect to the Program Statement are properly before the district court, which, again, has the benefit of considering these issues in the context of the parties' full briefing, expert declarations, and other evidence submitted by the parties unavailable to this Court in this posture. It is *Defendants' burden* to show that

14

Plaintiffs and the class *will not* be substantially injured if a stay is granted, and Defendants fail to make that showing for any of the Plaintiffs: they do not offer anything to show that Plaintiff Kingdom, for example, will not again suffer suicidal ideation, anxiety, and more due to her gender dysphoria if she is again deprived of hormone therapy and social accommodations.

The balance of equities here decisively favors Plaintiffs: as the district court recognized in denying Defendants' motion to stay, whereas the alleged harm Defendants face is possible additional delay in enforcing the Program Statement, "Plaintiffs, by contrast, would suffer the immediate loss of their gender-affirming health care and social accommodations." Dkt. 210. Denying the motion to stay thus favors public interest.

The public interest is also served by denying the stay motion because it would avoid the chaos of unravelling the status quo (BOP providing hormone therapy and social accommodations to treat gender dysphoria) only for it to potentially be reversed and returned if the district court grants Plaintiffs' pending motion for an updated preliminary injunction after the "short window" it anticipates it will take for it to rule on the pending motion. Dkt. 210. Indeed, Defendants do not explain why being able to start enforcing the Program Statement now, before the district court has had an opportunity to consider whether it passes constitutional and statutory muster, would serve the public interest.

**III. Defendants Are Not Substantially Likely To Succeed On The Merits.**

Because Defendants have not met their burden on any of the other prerequisites for a stay pending appeal, this Court does not need to reach Defendants' arguments on the merits. Even if it does, however, Defendants fail to make a "strong showing" that they are likely to succeed on the merits. *Nken*, 556 U.S. at 434.

Defendants contend that the district court erred in granting Plaintiffs' motion to renew the preliminary injunction because it did not consider the Program Statement. That argument fails for several reasons.

As a threshold matter, Defendants are incorrect that the May 26 order is based solely on BOP's 2025 implementing memoranda. As explained above, the district court's June 3, 2025 preliminary injunction was never premised exclusively on the implementing memoranda. Instead, it was based on the memoranda *and* BOP's *actions* "with respect to the plaintiffs' gender-affirming care as of the date that the Complaint was filed." Add.22. Indeed, in finding final agency action, the district court emphasized "the plaintiffs' experiences confirm[ing] that . . . the agency was no longer mulling whether the plaintiffs' hormone therapy should cease" and whether they would have access to social accommodations that led the court to conclude there was final agency action. Add.21-23. It therefore is BOP's actions discontinuing gender-affirming health care pursuant to the EO that formed the basis for the district court's ruling on Plaintiffs' likelihood of success on the merits—and

16

those actions are what the district court enjoined in its May 26 order.

Nor did the district court ignore the Program Statement as Defendants argue. The district court in its May 26 order acknowledged that there are "new factual circumstances in this case," *i.e.*, the Program Statement, but held that they do not "necessitate a reassessment at this juncture of th[e] [c]ourt's prior holding that Plaintiffs have met their burden for preliminary injunctive relief." Add.2. This conclusion is sound. A preliminary injunction order is interpreted based on "what the decree was really designed to accomplish." *Mayor and Aldermen of Vicksburg v. Henson*, 231 U.S. 259, 273 (1913). As the district court recently explained, it "renewed the existing preliminary injunction for the short period necessary to decide" Plaintiffs' updated preliminary injunction motion, "which challenges the [Program Statement] on APA and Eighth Amendment grounds." Dkt. 210. Defendants have not made a "strong showing" that the district court lacked authority to issue this order.

Defendants' other arguments fail on largely these same grounds. They contend that the PLRA does not expressly authorize courts to renew preliminary injunctions at the end of the 90-day period, Mot. 18, but as this Court recently observed, "every court of appeals that has reached the issue" agrees that the PLRA does not limit a district court's ability to do so. *Doe v. Blanche*, 172 F.4th 901, 912 (D.C. Cir. 2026); *cf. Jackson v. District of Columbia*, 254 F.3d 262, 268 (D.C. Cir. 2001) (holding that

17

the PLRA does not displace federal courts' "traditional power to issue injunctions to preserve the *status quo* while administrative proceedings are in progress") (cleaned up).

Any difference between a "renewed" preliminary injunction, as styled here, and a "new" preliminary injunction, which Defendants agree is permissible under the PLRA, Mot. 18-19, is purely semantic. Defendants argue that "[a]ny successive preliminary injunction under the PLRA must 'address the current situation,'" Mot. 19 (quoting *Monroe v. Bowman*, 122 F.4th 688, 697 (7th Cir. 2024)), but the May 26 order does that: it acknowledges that "there are new factual circumstances in this case," but nevertheless concludes that they do not "necessitate a reassessment at this juncture of [t]he [c]ourt's prior holding" granting the preliminary injunction. Add.2.

Defendants' only other argument on the merits regarding the district court's authority to enjoin enforcement of the EO fares no better. Although Executive Orders themselves are not subject to APA review because the President is not an "agency" under the APA, *Chamber of Com. of U.S. v. Reich*, 74 F.3d 1322, 1326 (D.C. Cir. 1996), agency actions taken pursuant to Executive Orders are reviewable under the APA. *See, e.g.*, *Vecinos para el Bienestar de la Comunidad Costera v. FERC*, 6 F.4th 1321, 1330 (D.C. Cir. 2021) (subsequent history omitted). The May 26 order targets agency action only. By enjoining Defendants from enforcing the relevant provisions of EO 14168, the order enjoins the same final agency action that formed the basis of

the court's original preliminary injunction: the categorical ban on hormone therapy and social accommodations. Indeed, the court's original preliminary injunction also enjoined Defendants from enforcing the relevant provisions of the EO, taking into account BOP's actions pursuant to the EO other than the implementing memoranda—namely, its actions with respect to Plaintiffs. Defendants' arguments regarding the scope of the May 26 order therefore are unavailing.

## CONCLUSION

This Court should deny Defendants' requests for an administrative stay and for a stay pending appeal.

Dated: June 4, 2026               Respectfully submitted,

| | |
|---|---|
| Li Nowlin-Sohl | /s/ Aditi Shah |
| Leslie Cooper | Aditi Shah |
| Shana Knizhnik | Michael Perloff |
| James D. Esseks | AMERICAN CIVIL LIBERTIES UNION |
| AMERICAN CIVIL LIBERTIES UNION | FOUNDATION OF THE |
| FOUNDATION | DISTRICT OF COLUMBIA |
| 125 Broad Street, 18th Floor | 529 14th Street NW, Suite 722 |
| New York, NY 10004 | Washington, DC 20045 |
| 212-549-2500 | 202-457-0800 |
| lnowlin-sohl@aclu.org | ashah@acludc.org |
| lcooper@aclu.org | mperloff@acludc.org |
| sknizhnik@aclu.org | |
| jesseks@aclu.org | |
| | |
| David C. Fathi | Shawn Thomas Meerkamper |
| Maria V. Morris | Megan Z. F. Noor |
| Elisa C. Epstein | Dale Melchert |
| AMERICAN CIVIL LIBERTIES UNION | TRANSGENDER LAW CENTER |
| FOUNDATION | PO Box 70976 |
| 915 15th Street NW | Oakland, CA 94612 |

Washington, DC 20005
202-393-4930
dfathi@aclu.org
mmorris@aclu.org
eepstein@aclu.org

510-587-9696
shawn@transgenderlawcenter.org
megan@transgenderlawcenter.org
dale@transgenderlawcenter.org

Corene T. Kendrick
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104
202-393-4930
ckendrick@aclu.org

Lynly S. Egyes
TRANSGENDER LAW CENTER
594 Dean Street, Suite 11
Brooklyn, NY 11238
510-587-9696
lynly@transgenderlawcenter.org

*Counsel for Plaintiffs-Appellees*[1]

---

[1] Counsel wish to acknowledge the assistance of American Civil Liberties Union of the District of Columbia legal intern Isabelle Carlisle and paralegal Ameerah Adetoro in the preparation of this brief.

20

**CERTIFICATE OF COMPLIANCE**

I hereby certify that my word processing program, Microsoft Word, counted 4,404 words of the foregoing brief, and that this complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A). I further certify that the document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Times New Roman font.

*/s/ Aditi Shah*
Aditi Shah

**CERTIFICATE OF SERVICE**

I hereby certify that on June 4, 2026, I electronically filed the foregoing brief with the Clerk of the Court of the U.S. Court of Appeals for the D.C. Circuit by using the Appellate CM/ECF system, which will send notice to all counsel who are registered CM/ECF users.

*/s/ Aditi Shah*
Aditi Shah