**No. 26-5181**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

ALISHEA KINGDOM, SOLO NICHOLS, and JAS KAPULE,
on behalf of themselves and all persons similarly situated,

Plaintiffs-Appellees,

v.

DONALD J. TRUMP, in his official capacity as President of the
United States, et al.,

Defendants-Appellants.

On Appeal from the United States District Court
for the District of Columbia

## REPLY IN SUPPORT OF EMERGENCY MOTION FOR A STAY
## PENDING APPEAL AND ADMINISTRATIVE STAY

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIC D. McARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
CHARLES W. SCARBOROUGH
McKAYE L. NEUMEISTER
DOMENIC A. CANONICO
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7246*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-1754*

**TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS ................................................................................... i

INTRODUCTION .......................................................................................... 1

ARGUMENT ................................................................................................ 3

I.      The Government Is Likely To Prevail On The Merits. ......................... 3

II.     The Remaining Factors Favor A Stay. ............................................... 8

CONCLUSION ............................................................................................ 11

CERTIFICATE OF COMPLIANCE

ATTACHMENT:  Order Denying Stay (Dkt. 210)

## INTRODUCTION

Plaintiffs do not dispute the critical points demonstrating that the district court's May 26 preliminary injunction is unlawful. As explained in the government's stay motion, the court purported to "extend" a prior injunction it had issued on arbitrary-and-capricious grounds against the 2025 Bureau of Prisons (BOP) memoranda implementing the President's *Defending Women* Executive Order to prohibit the agency from implementing its superseding 2026 Policy, which was premised on new findings and an extensive administrative record. But the court failed to do any of the necessary work to evaluate whether plaintiffs were entitled to an injunction against that *new* policy. Instead, the court just mechanically extended its earlier injunction. That order disregards fundamental principles of equity and violates clear time limits in the Prison Litigation Reform Act (PLRA) on injunctions concerning prison conditions. It also inflicts grave harms on the government by intruding on the President's prerogatives to set policy for the operation of the federal prisons and impairing BOP's ability to safely and securely care for the inmates in its custody.

Plaintiffs' defense of the district court's order on the merits (at 16-19) is remarkably cursory, and they concede the central points of the

government's stay motion. Plaintiffs do not deny that their claims challenging BOP's 2025 memoranda are moot, or that they abandoned those claims and filed a supplemental complaint challenging BOP's new policy. They do not dispute that the sole merits ground for the injunctions they initially obtained was the court's arbitrary-and-capricious holding with respect to the now-defunct 2025 memoranda. They also do not dispute that they needed to file a substantively different preliminary injunction motion, premised on new APA claims, in order to obtain any further injunctive relief against BOP's 2026 Policy, which has new findings and an extensive administrative record. And despite recognizing that successive preliminary injunctions under the PLRA must "address the current situation," they expressly concede that the order here was not based on a "reassessment" of present circumstances. Resp. 18 (quotations omitted). Instead, plaintiffs assert that the May 26 order was the district court's means of securing for itself "the short period [of time] necessary to" *actually* address the current situation by ruling on plaintiffs' motion for a new preliminary injunction against the new policy. Resp. 17 (quotation omitted).

Plaintiffs' concessions are fatal to their position. It is never permissible for a district court to issue an unsupported and unexplained injunction against an Executive Branch policy for the sole purpose of buying itself time

to think about whether an injunction is appropriate—let alone to "extend" an injunction previously issued against a *different* policy. Plaintiffs have not sought a temporary restraining order against BOP's superseding 2026 Policy, and it is not the role of the district court to step into plaintiffs' shoes to seek one for them. *See Margolin v. National Ass'n of Immigration Judges*, 146 S. Ct. 1285, 1288 (2026). And in any event, the district court could not properly issue a TRO against the 2026 Policy without finding plaintiffs are likely to succeed in their challenge to that policy. Fed. R. Civ. P. 65(b), (d); *Dellinger v. Bessent*, No. 25-5028, 2025 WL 559669, at *3 (D.C. Cir. Feb. 15, 2025). Because the court did not purport to make that finding, its "extend[ed]" injunction is manifestly unlawful. Such an injunction is especially egregious in the context of prison litigation, where Congress has established strict limits on the duration and scope of preliminary relief. A stay of the court's preliminary injunction is accordingly warranted.

## ARGUMENT

### I. The Government Is Likely To Prevail On The Merits.

The district court's May 26 preliminary injunction is unlawful under any standard. Without any supporting findings or analysis, the court "extend[ed]" a prior injunction governing prison conditions in an order whose only discernible purpose is to evade statutory time limits on such

injunctions.  Stay Mot. Add.2.  That defies basic principles of equity and important limits on remedies under the PLRA.

Plaintiffs' cursory attempt to defend the court's order (at 16-19) rests on two irreconcilable positions that lack merit in any event.  They contend, on the one hand, that the court *did* "address the current situation"—namely, by "acknowledg[ing]" the "new factual circumstances" and "conclud[ing] that they do not necessitate a reassessment … of the court's prior holding" that a preliminary injunction is appropriate.  Resp. 18 (cleaned up).  On plaintiffs' view, then, it suffices for a district court simply to acknowledge that circumstances have changed and then summarily declare that those changes do not matter.  That is plainly wrong, and even plaintiffs do not appear to believe it:  they simultaneously concede (at 8, 14) that these changes *do* matter, so much that they had to bring new claims challenging BOP's new policy.  Indeed, plaintiffs urge this Court to refrain from acting "in this extraordinary posture" precisely because this Court lacks "the benefit … of the parties' full briefing, expert declarations, and other evidence" that the district court is "considering in relation to [p]laintiffs' pending motion" for a preliminary injunction based on the new circumstances.  Resp. 13, 14.  That contention gives up the game:  plaintiffs recognize that circumstances have fundamentally and materially changed with the 2026 Policy, and that a

4

fair assessment of their new claims requires consideration of the merits of the 2026 Policy.

Plaintiffs also repeatedly defend the district court's injunction (at 2, 12, 13, 17) on the ground that the court was simply trying to buy itself additional time for "the short period necessary to decide" plaintiffs' motion for an injunction against BOP's 2026 Policy. Add.1. That only underscores the court's abuse of its equitable authority: it demonstrates that the district court understood that the 2026 Policy presents a new set of circumstances for which the court needed to conduct a new analysis. There is a tailor-made tool available for courts to secure a short period of time to rule on a preliminary injunction—a temporary restraining order. Even a TRO, however, must "state the reasons why it issued." Fed. R. Civ. P. 65(d)(1)(A); *see Dellinger v. Bessent*, No. 25-5028, 2025 WL 559669, at *3 (D.C. Cir. Feb. 15, 2025) ("The standard for obtaining either a TRO or a preliminary injunction is identical." (citing *Gordon v. Holder*, 632 F.3d 722, 723-24 (D.C. Cir. 2011)). But instead of issuing a TRO against the 2026 Policy, the court just mechanically "extend[ed]" a prior injunction against a different policy, Stay Motion Add.2, thereby evading both the strict 14-day time-limit in Rule 65(b)(2) and the necessity of finding that plaintiffs have established a likelihood of success as to the 2026 Policy. In short, the court gave itself a

free pass from the strictures of the PLRA, Rule 65, and equity. And plaintiffs defend all of this as appropriate.

On the other hand, plaintiffs briefly attempt to argue that circumstances have *not* actually changed. On plaintiffs' telling, the district court's original June 2025 preliminary injunction was not "based solely on" the 2025 memoranda, but more generally on "BOP's actions discontinuing" their preferred forms of medical treatment "pursuant to the EO." Resp. 16. Plaintiffs therefore suggest that BOP's current actions aimed at discontinuing those treatments as directed by the EO are encompassed within the court's original reasoning.

The district court's sole basis for granting the original preliminary injunction, however, was its conclusion that the 2025 memoranda failed the APA's reasoned-explanation requirement. Stay Motion Add.24-27. The 2026 Policy answers that objection, as plaintiffs themselves have recognized in this litigation. After the 2026 Policy was announced, plaintiffs moved for "an updated preliminary injunction that encompasses [the 2026 Policy] to preserve [their] access" to their preferred treatment. Dkt. 179-1, at 3. And they abandoned their claims challenging the 2025 memoranda. Dkt. 194, at 3 n.1. Those actions are wholly inconsistent with their current assertions that

6

the reasoning behind the court's original injunction encompasses the 2026 Policy as well.

In any event, the APA does not provide a basis for broadly barring BOP from taking any actions to implement the EO at all. *See Franklin v. Massachusetts*, 505 U.S. 788, 800-01 (1992). Recognizing as much, plaintiffs defend the May 26 order on the ground that it "enjoins the *same* final agency action that formed the basis of the court's original preliminary injunction[.]" Resp. 18-19 (emphasis added). But the 2026 Policy is manifestly *not* the same agency action as BOP's 2025 memoranda. *See* Add.1 (calling the "2026 Program Statement" a "new policy"). BOP responded to the district court's 2025 ruling by adopting a revised policy that addressed the faults found by the district court. That was entirely appropriate. "Under settled law, an agency may respond to an adverse ruling by adopting a revised policy, and it 'need not seek modification of [an] injunction before it initiates' those efforts." *New York Times Co. v. U.S. Dep't of Def.*, No. 26-5113, 2026 WL 1179440, at *3 (D.C. Cir. Apr. 27, 2026) (per curiam) (quoting *NAACP v. Donovan*, 737 F.2d 67, 72 (D.C. Cir. 1984)). The district court cannot mechanically treat BOP's new policy as a continuation of the prior policy— much less a continuation that suffers from the same legal flaws, particularly where the agency has compiled a new record and substantial new

7

justifications for its actions—simply because the new policy seeks to implement the policy objectives of the same executive order.

## II.    The Remaining Factors Favor A Stay.

Given their weakness on the merits, plaintiffs focus their attention on the balance of harms, but they fare no better here.  Plaintiffs' core refrain is that BOP cannot be irreparably injured because the May 26 injunction merely "maintains the status quo as it has existed" during this litigation and "for years" before it.  Resp. 11-12; *see* Resp. 2.

That gets things exactly backwards.  The status quo under the PLRA is that prison administrators are free of "unwarranted federal-court interference with the administration of prisons." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).  Thus, Congress directed that "[p]reliminary injunctive relief" in prisons "shall automatically expire on the date that is 90 days after its entry" unless the issuing court makes statutorily required findings and converts the order into a final judgment, and required that courts issue only "narrowly drawn" relief that is "the least intrusive means necessary to correct the harm."  18 U.S.C. § 3626(a)(2).

Although the government does not concede that the preliminary injunctions issued prior to the May 26 order were proper, they were at least premised on salient legal analysis.  And, consistent with the PLRA, each such

injunction expired after 90 days, and each order reissuing an injunction explained, accurately, that there had been no new factual developments and thus that the court's original reasoning applied with equal force at the time of reissuance. None of that is true of the May 26 injunction, as plaintiffs themselves elsewhere acknowledge. By issuing that "extend[ed]" injunction, Stay Mot. Add.2, the district court claimed authority to superintend the BOP's provision of medical care without making any of the findings necessary to justify such relief and in flat defiance of the PLRA's limits on the duration and scope of relief. That constitutes irreparable harm. *See Trump v. CASA, Inc.*, 606 U.S. 831, 860 (2025).

Contrary to plaintiffs' contention (at 13), it is immaterial that the government did not immediately move to dissolve the then-existing preliminary injunction at the time BOP announced the 2026 Policy. Although the government did in fact file such a motion later, Dkt. 160, there was no need to do so because under the PLRA the stale injunction was set to expire by operation of law on May 31. When the district court took the extraordinary step of extending the prior preliminary injunction beyond that date, without any analysis of the fundamentally changed circumstances, the government promptly sought relief in this Court.

Even aside from the court's extraordinary usurpation of authority, BOP faces irreparable harm in being compelled to confront the serious security, administration, and medical risks of continuing the medical care and social accommodation policies it has disavowed and seeks to change. Those determinations are entitled to great deference. *See Hatim v. Obama*, 760 F.3d 54, 59 (D.C. Cir. 2014). Plaintiffs make light of this harm and assert that those risks "are being assessed and weighed by the district court" in its consideration of their new preliminary injunction motion regarding the 2026 Policy. Resp. 12. But plaintiffs' disagreement with BOP's evaluation of risks does not undermine the harms inflicted upon BOP from a district court preventing the agency from addressing those risks in the manner it has determined is most appropriate and "in the best interest of [BOP], its officials, and those in its custody." Dkt. 186-1, at 22, 31; *see O'Lone v. Estate of Shabazz*, 482 U.S. 342, 353 (1987) (it is inappropriate for a court to "substitute [its] judgment" on "sensitive matters" of prison administration "for the determinations of those charged with the formidable task of running a prison" (quotation omitted)). At a minimum, the district court was required to evaluate the parties' competing views with respect to risks and all the new elements of BOP's new policy before issuing any further

injective relief; it could not simply rely on prior findings based on a different record and a different policy.

## CONCLUSION

This Court should grant a stay pending appeal.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIC D. McARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
CHARLES W. SCARBOROUGH
McKAYE L. NEUMEISTER
*/s/ Domenic A. Canonico*
DOMENIC A. CANONICO
  *Attorneys, Appellate Staff*
  *Civil Division*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-1754*

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(C) because it contains 2,205 words.  This motion also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in 14-point Georgia, a proportionally spaced typeface.

*/s/ Domenic A. Canonico*
Domenic A. Canonico
